UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-250-H

ATLANTIC MUTUAL INSURANCE CO.                                        PLAINTIFF

V.

MICHAEL YATES                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Atlantic Mutual Insurance Co. ("Atlantic"), provided Defendant, Michael Yates ("Yates"), with comprehensive automobile, property, uninsured motorist and personal umbrella insurance coverage (the "Plan"). Yates incurred over $1,000,000.00 in medical bills arising from an automobile accident with an uninsured motorist. Atlantic says that it has paid its policy limits of $500,000.00 and owes nothing more. Yates claims entitlement to additional UM coverage because: (1) his uninsured motorist ("UM") insurance covered two vehicles and he should be allowed to "stack" the $500,000.00 limit for those two vehicles to obtain a total of $1,000,000.00 in coverage; and (2) an additional $1,000,000.00 of UM protection should be imputed into his umbrella coverage because Atlantic failed to provide UM coverage under the umbrella provision of the Plan and neglected to obtain a rejection of such coverage in writing.

Atlantic filed this complaint for declaratory judgment to resolve the dispute. Currently before the Court are cross motions for summary judgment and a motion to certify several questions to the Kentucky Supreme Court.

**I.**

The facts of this case are undisputed. The legal significance of those facts, however, is strongly contested.

Atlantic issued is first insurance coverage to Yates in 2000. At that time, Atlantic provided auto coverage, including uninsured motorist coverage, to two vehicles owned by the Yates family. According to the policy in effect then, Yates paid a premium of $228.00 for $500,000.00 of uninsured motorist coverage. Atlantic calculated the premium on a per vehicle basis, meaning that the more vehicles included on the Plan, the more the premium for the coverage. In 2001, however, Atlantic changed its method of setting premiums for uninsured motorist coverage in response to a Kentucky Supreme Court opinion that allowed "stacking" of UM limits where the UM premiums were paid on a "per-vehicle" basis.[1] In an attempt to avoid the consequences of this decision, Atlantic began setting its UM premiums at a constant, per-policy rate, meaning that UM coverage is the same price regardless of how many vehicles are insured. Under this new rate structure, Yates paid $253.00 for $500,000.00 of UM coverage. Atlantic sent Yates an amended copy of the insurance policy showing this change.

In 2003, Yates renewed his insurance coverage under the Plan. The Plan divided the premiums for various types of coverage between Yates' two vehicles, clearly indicating the premium assessed for each. Next to "Unins./Underins." the column for each vehicle contains only an asterisk that directs the reader to the "Optional Coverages Page." On that page, the Plan states, "Rates for UM or UM/UIM and added PIP are applied on a per policy basis. The same

---

[1] Stacking simply means that an insured can recover the limits of his UM policy for each vehicle he owns. For example, where a policy covers two vehicles and has a limit of $500,000.00 in UM coverage, the insured can collect $1,000,000.00 on a UM claim.

rate applies regardless of the number of vehicles insured on this policy." It is undisputed that Yates received this copy of the Plan.

In addition to the automobile coverage, the Plan included coverage for the Yates' property and person under an umbrella provision. This provision was designed to protect Yates beyond the limits of his underlying insurance and had a total policy limit of $1,000,000.00. Under the heading "**DAMAGES WE WON'T PAY**," the umbrella provision specifically stated, "**(21) Uninsured/Underinsured Motorists Coverage**. We won't pay for Uninsured/Underinsured Motorists Coverage or No-Fault benefits unless such coverage is specifically shown on the Coverages Page as an Umbrella coverage." The coverages page does not list uninsured motorist coverage.

During the Plan's term, Yates was involved in a serious automobile accident with an uninsured motorist and incurred over $1,000,000.00 in medical expenses. He submitted his claim to Atlantic, which paid him $500,000.00. When Yates continued to demand additional monies, Atlantic filed this action seeking a declaration limiting its obligation to the payment of $500,000.00.

## II.

The first issue is whether Yates' UM coverage is stackable. In essence, he argues that because he insured two vehicles under the Plan and paid a high premium for his UM coverage, he is entitled to stack that coverage for a total policy limit of $1,000,000.00.[2]

---

[2] Yates asks the Court to certify the question of whether stacking is available in this case to the Kentucky Supreme Court. The issue of certification was discussed by the Sixth Circuit in *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449-50 (6th Cir. 2009): "The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court. . . . [T]he federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." (citations and quotations omitted). The Court finds

The guiding principle for interpretation of an insurance contract in Kentucky is the "reasonable expectations" of the insured. "[W]hen one has bought and paid for an item of insurance coverage, he may reasonably expect it to be provided." *Marcum v. Rice*, 987 S.W.2d 789, 791 (Ky. 1999). In the context of UM coverage, Kentucky courts have determined that the insured's reasonable expectations depend on how UM premiums are charged. There are two categories of cases: (1) where an insured pays multiple UM premiums based on the number of vehicles on the policy, the insured is entitled to stack his policy limits, *James v. James*, 25 S.W.3d 110, 112 (Ky. 2000); and (2) where the UM premium is actuarially calculated on a per-policy basis without regard to the number of vehicles covered, stacking is not allowed, *Marcum*, 987 S.W.2d at 791.[3] This distinction exists because UM coverage is deemed personal under Kentucky law, meaning that it runs with the insured not with any particular vehicle. Therefore, where an insured pays for UM coverage multiple times, as is the case with a per-vehicle premium, that insured has a reasonable expectation of receiving multiple coverages. However, where the premium is constant regardless of the number of vehicles insured, the insured can expect only a single coverage.

This case appears to clearly fall within the second of the two categories. It is undisputed that Atlantic charged a flat rate of $253.00 per-policy for $500,000.00 of UM coverage, regardless of the number of vehicles insured. Thus, this appears to be a clear per-policy premium. Moreover, the policy explicitly stated that UM rates are applied per-policy without

---

that Kentucky law is clear on when stacking is and is not available. Thus, there is no need to certify the question.

[3] Of course, if the "per-policy" premium is merely illusory, then stacking will be allowed. *See Estate of Swartz v. Metro. Prop. & Cas. Co.*, 949 S.W.2d 72 (Ky. Ct. App. 1997) (finding that coverage was stackable despite the fact that the insurance company called its premium "per-policy" because the premium was, in reality, different depending on the number of vehicles insured).

regard to the number of vehicles insured. Yates would pay the same UM coverage premium even if he were to sell one of his vehicles or buy several more. Thus, Yates would have had no reason to believe that he would be entitled to any more than $500,000.00 in UM coverage.

Nevertheless, Yates contends that stacking should be permitted under the logic of *Estate of Swartz v. Metro. Prop. & Cas. Co.*, 949 S.W.2d 72 (Ky. Ct. App. 1997). There, the Court examined an insurance policy that claimed to charge UM premiums on a per-policy basis. However, the evidence showed that the company charged its rate based on the number of vehicles insured, charging $6.00 for coverage of one vehicle and $10.00 for coverage of two vehicles. In fact, the policy stated, "Your cost will be based on how much coverage you select and *on whether or not you choose to insure more than one automobile*." *Id.* at 77 (emphasis in original). The Kentucky Court of Appeals determined that the insured had, in fact, paid for multiple UM coverages and, therefore, was entitled to stack those coverages. The court, however, "emphasize[d] that an insurance company could, through the calculation and adoption of an actuarially appropriate premium, charge an insured a single UIM fee *regardless of the number of vehicles covered under the policy*, entitling the insured to only one unit of UIM protection." *Id.* (emphasis in original).

Yates says that this last statement leaves an opening for him to stack his coverage because Atlantic's premium was not "actuarially appropriate." He argues that Atlantic based its premium on revenues rather than an examination of risk. Therefore, according to Yates Atlantic has not complied with the requirements in *Swartz* for avoiding stacking. It is undisputed that in 2001, when Atlantic changed its premiums from per-vehicle to per-policy, it calculated the per-policy premium to keep its revenues the same as when it used a per-vehicle premium. To do

5

this, Atlantic determined the total revenue from all policies by multiplying its per-vehicle rate times the total number of vehicles insured with Atlantic. It then divided that number by its total number of policies with UM coverage, resulting in the $253.00 figure. Yates argues that this calculation should allow him to stack his coverage because: (1) the new premium allowed Atlantic to maintain its revenue levels while simultaneously reducing its total exposure, and (2) Yates could not reasonably have expected his coverage to decrease when his premium actually increased.[4]

Even though these facts may be true, the most relevant fact also remains true: the premium was the same regardless of the number of vehicles insured. The court in *Swartz* expressly emphasized the determinative inquiry as whether the fee remained constant "*regardless of the number of vehicles covered under the policy*." *Id.* (emphasis in original). This principle was expressly affirmed by the Kentucky Supreme Court in *Marcum*, where the court found that an insurance company can avoid stacking by charging a flat, per-policy premium even if the insurance company changed its premium practices from a per-vehicle rate for the express purpose of avoiding stacking.[5] Thus, an "actuarially appropriate" premium for purposes of stacking coverages appears to be one that is calculated on a per-policy, not a per-vehicle basis.[6]

---

[4] Yates previously paid $228.00 for stackable coverage with a total limit of $1,000,000.00.

[5] In fact, the insurance company in *Marcum* originally calculated its per-policy premium the same way Atlantic did. While that company subsequently adjusted its premium based on risk to better meet market demand, the Kentucky Supreme Court in no way expressed that such an adjustment was necessary to avoid stacking.

[6] In essence, Atlantic raised the cost of $500,000.00 of UM coverage. That does not entitle Yates to stacking. It may well mean that Atlantic has priced itself out of the market, but that is a conclusion that will be bourne out only by the supply and demand for its UM coverage. It does not speak to the ability of an insured to stack his UM coverage under Kentucky law.

As for Yates' assertion that he could not reasonably expect his coverage to go down while his premiums went up, that expectation is overcome by the policy language. The only basis for a reasonable expectation of stacking is where the insured actually pays multiple premiums for UM coverage. Here, the policy expressly provided that the coverage was constant regardless of the number of vehicles insured. Thus, the basis for a reasonable expectation of stacking was expressly removed. Yates could no longer reasonably believe he would be allowed to stack his UM coverages.[7]

### III.

The second issue is whether this Court should impute UM coverage into the umbrella provision of the Plan. The starting point in this discussion must be Yates' acknowledgment that the umbrella provision, on its face, does not provide UM coverage and that he did not pay a premium for such coverage. At its most basic, to impute UM coverage under these circumstances would directly contradict the primary objective stated by the Kentucky Supreme Court that "when one has *bought and paid* for an item of insurance coverage, he may reasonably expect it to be provided." *Marcum*, 987 S.W.2d at 791 (emphasis added).

However, there are circumstances in which UM coverage is imputed to an insurance policy even where the insured has no reasonable expectation of receiving it. KRS § 304.20-020 requires all automobile insurance policies[8] to include at least the state minimum UM coverage

---

[7] Yates also argues that statements by Atlantic to the Kentucky Insurance Commission that its coverage was not changed by the 2001 premium change should estop it from arguing that stacking is no longer available. While this statement to the Commission may cause problems between Atlantic and the Commission, it does not impact Yates' reasonable expectations related to stacking his UM coverage. He did not know about the statements to the Commission, so his expectations cannot be based on those statements.

[8] An umbrella policy is considered an "automobile policy" for purposes of this statute. *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33 (Ky. 2004).

7

($25,000.00 in Kentucky) or get a written rejection of such coverage. Where an insurance policy does not include UM coverage and the insured did not reject it in writing, UM coverage in the minimum amount required will be imputed. *Meridian Mut. Ins. Co. v. Siddons*, 451 S.W.2d 831, 833 (Ky. 1970). Each policy is treated individually for purposes of the statute. Therefore, even if the insured has UM coverage on one policy, coverage will be imputed to a second policy if the insurer did not comply with the statutory requirements. *Id.* at 834. The only issue in this case, then, is whether the umbrella coverage was a separate policy from the automobile coverage that included UM protection.[9] If it was separate, then UM coverage must be imputed. If it was part of one policy, there is no need to impute UM coverage because the policy provided $500,000.00 of coverage.

The Court finds that the only reasonable interpretation of the Plan is that it constitutes a single, all-inclusive insurance policy. The Plan was created at one time, all coverages are explained in a single document, and the Plan is billed as a single policy. On the "declarations" page of the Plan that explains coverages and premiums, the description of UM coverage is on the same page as the description of the umbrella coverage. Moreover, the charges for the Plan are listed as the "Total Policy Charge." When that total charge is broken down, the various components (property, automotive, UM, and umbrella) are listed as "coverages," not policies. Clearly, all the parties believed that one insurance policy had been purchased that contained multiple coverages. This Court does not believe that Kentucky courts could reach a different conclusion in the face of such clear policy details.

---

[9] Again the Court finds that Kentucky law on the availability of imputation of UM coverage is relatively clear and straight-forward. Thus, the Court will not certify the question of whether the umbrella coverage is a separate policy to the Kentucky Supreme Court.

Yates contends that the umbrella provision is a separate policy because it is referenced on Atlantic's website and in other Atlantic literature as an umbrella "policy." While Atlantic may sell its umbrella coverage as a separate policy, the Plan actually entered between Yates and Atlantic is clearly not of that type. He further asserts that the umbrella coverage is a separate policy because the premium for the umbrella coverage is calculated independently from the premium for the automobile coverage. For such a contention to be valid, however, every portion of the Plan must be a separate policy. There is a different premium for automobile liability for each vehicle insured, but it is agreed that those vehicles are insured on the same policy. The premium for UM coverage is calculated independent of the automobile premiums, but it is agreed that those coverages are part of the same policy. Thus, there is simply no support for Yates' contention that these are separate policies.

Next, Yates points to the case of *Abrohams v. Atlantic Mut. Ins. Agency*, 638 S.E.2d 330 (Ga. Ct. App. 2006) for support of his position. The facts of that case are very similar to ours. The Abrohams family purchased property, automotive and umbrella insurance from Atlantic. Presumptively, they purchased these coverages at the same time under a "Master Plan." Like Yates, the Abrohams were involved in an accident with an uninsured motorist and claimed they were owed UM coverage under their umbrella policy in addition to their automotive policy. The Georgia Court of Appeals imputed UM coverage into the umbrella policy under a statute similar to KRS § 304.20-020. However, in doing so the court simply assumed that the automotive policy and the umbrella policy were separate and distinct. There is no discussion of whether the coverages were included on a single policy and it appears the argument was never raised. Rather, the court only examined whether an umbrella policy was an "automobile policy" subject

9

to the requirement of UM coverage. Because the court answered that question in the affirmative, as Kentucky courts have done, it imputed UM coverage. Because the "single policy" argument was not considered by the Georgia court, this Court finds that *Abrohams* has little bearing here. The clear facts of this case indicate that Yates purchased only one policy and that policy, as required by statute, included UM coverage.

Finally, the Court finds that there is no public policy reason to impute UM protection into the umbrella provision of the Plan. As noted, Yates had no reasonable expectation of UM coverage from his umbrella provision. Moreover, KRS § 304.20-020 is designed to ensure that all motorists have at least the minimum UM coverage required by the state. Here, Yates had twenty times the minimum UM coverage. Therefore, declining to impute coverage to the umbrella provision does not offend any public policy of Kentucky.

The Court will issue an Order consistent with this Memorandum Opinion.

cc: Counsel of Record